UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LOUISE MARIE DOVERSPIKE,

       Plaintiff,

v.

INTERNATIONAL ORDINANCE TECHNOLOGIES,[1]

       Defendant.

**DECISION
and
ORDER**

**09-CV-00473F
(consent)**

---

APPEARANCES:    LOUISE MARIE DOVERSPIKE, *Pro Se*
         608 Prendergast
         Apt. # 4
         Jamestown, New York 14701

         WAGNER & HART
         Attorneys for Defendant
         EDWARD J. WAGNER, of Counsel
         214 North Barry Street
         Olean, New York 14760

## JURISDICTION

On November 10, 2009, the parties to this action consented pursuant to 28 U.S.C. § 636(c)(1) to proceed before the undersigned. The matter is presently before the court on Defendant's motion to dismiss (Doc. No. 4), filed July 14, 2009, and on Plaintiff's motion that this case be kept active (Doc. No. 11), filed July 30, 2009.

## BACKGROUND

Plaintiff Louise Marie Doverspike ("Plaintiff" or "Doverspike"), proceeding *pro se*,

---

[1] According to the website for government defense contracts, International Ordnance Technologies, Inc. is Defendant's correct name, www.governmentcontractswon.com, and the Clerk of the Court is directed to amend the caption to reflect so.

commenced this action on May 15, 2009, alleging employment discrimination and retaliation, based on race, national origin, religion, age and disability, against former employer, Defendant International Ordnance Technologies ("Defendant" or "International Ordnance"), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (race and religion), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("the ADEA"), and Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("the ADA") (disability). Defendant did not file an answer; rather, on July 14, 2009, Defendant filed the instant motion to dismiss the Complaint (Doc. No. 4) ("Defendant's motion"), along with supporting papers, including the Affirmation of Edward J. Wagner, Esq. ("Wagner") (Doc. No. 5) ("Wagner Affirmation"), and a Memorandum of Law (Doc. No. 6) ("Respondent's Memorandum"). The court's July 24, 2009 scheduling order (Doc. No. 8), directs that Plaintiff's response to Defendant's motion be filed by August 28, 2009, and also advises that Plaintiff's failure to respond to Defendant's motion may result in the dismissal of the action for failure to prosecute.

By letter to the court filed July 28, 2009 (Doc. No. 10) ("July 28, 2009 Letter"), Plaintiff advised that she was requesting the action not be dismissed, stating she "would like to make the motion to keep this case open because I [Plaintiff] am legally and morally in the right." July 28, 2009 Letter at 1. Plaintiff further requested the court send her any papers she would need to prepare such motion. July 28, 2009 Letter at 2. In opposition to Defendant's motion, Plaintiff filed an affidavit on July 30, 2009 (Doc. No. 11) ("Plaintiff's Affidavit"), stating she was "making the motion that this case be kept active," because she was qualified for the position from which she had been terminated,

she experienced human and civil rights violations at previous places of employment, and that Plaintiff is "legally and morally in the right . . . ." Plaintiff's Affidavit at 2.

By letter to the court filed August 26, 2009 (Doc. No. 12) ("August 26, 2009 Letter"),[2] Wagner advised that Defendant did not intend to file any papers in further support of Defendant's motion. On August 27, 2009, Defendant filed the Affirmation of Edward J. Wagner (Doc. No. 14) ("Wagner Reply Affirmation"), reiterating what Defendant previously stated in the August 26, 2009 Letter, *i.e.*, that Defendant did not intend to file further papers in support of Defendant's motion, but would rely on the original motion papers. Oral argument was deemed unnecessary.

Based on the following, Defendant's motion is GRANTED.

## **FACTS**[3]

Plaintiff, who is a Native American holding Native American spiritual beliefs, suffers from hypothyroidism (underactive thyroid), unspecified "ear problems," history of an abscessed tooth, and was, at all time relevant to this action, 48 years old.[4] On October 14, 2007, Plaintiff commenced working a full-time, permanent position with Defendant. Although Plaintiff does not provide the title of her position with Defendant, nor the precise nature of Defendant's business other than "metal industry," Complaint at

---

[2] The August 26, 2009 Letter was re-filed on September 16, 2009 (Doc. No. 16).

[3] Taken from the pleadings and motion papers filed in this action.

[4] Although Plaintiff stated in her Charge of Discrimination filed with New York State Division of Human Rights (attached to Complaint), that she was, at the time of her employment with Defendant in October 2007, 47 years old, based on Plaintiff's date of birth, December 8, 1958, Plaintiff's correct age at all times relevant to this action, would have been 48. This is consistent with Plaintiff's allegation in the Complaint, filed May 15, 2009, that she is 50 years old. Complaint ¶ 7.

19,, Plaintiff describes the duties for the employment position as inspecting small, metal parts for flaws as the parts moved by Plaintiff on a conveyor belt, Complaint at 7, and feeding the small metal parts into a tube to send the parts to the "presses." Complaint at 8. Plaintiff describes her first day on the new job as follows:

> I felt a little nauseated the motion of watching the parts move on the conveyor belt made me extremely ill. I began to feel extremely light head [*sic*] and I was trying very hard to hold myself together because I did not want to be terminated. I really needed a job, however, I knew I was gong to vomit at any given minute. . . . .

Complaint at 7.

Plaintiff eventually did get sick in the restroom, after which Plaintiff reported to the supervisor, Dana, that she felt ill, and requested a bucket and some disinfectant to clean the restroom. *Id*. at 9. Dana provided Plaintiff with a bucket and disinfectant and, after Plaintiff had cleaned the restroom, advised Plaintiff, whose shift was almost over, to go home. *Id*. at 9-10.

When Plaintiff reported to work the next day, another, unidentified, supervisor spoke with Plaintiff. Complaint at 10. The supervisor told Plaintiff he was sorry Plaintiff had become ill the previous day, but that Plaintiff worked too slowly and was not right for employment with International Ordnance. *Id*. at 10-11. According to Plaintiff, no one at International Ordnance looked at Plaintiff's application prior to offering Plaintiff the job, but when the supervisor terminated Plaintiff's employment, he held in his hand Plaintiff's application. *Id*. at 11. Plaintiff also refers to having been involved with a "very political issue" prior to being hired by Defendant, but provides no other details regarding such political issue. *Id*.

Plaintiff claims because of her hypothyroidism, she moves more slowly than an

"average person," but that she has five years experience as a metal worker at other metal shops. Complaint at 11-12. Plaintiff asserts that

> I can not help it that I had to file a complaint, or my ethnicity, national origin or that I have hypothyroidism. I am also only 4' 10" and a little chubby, they were not they are all slender and I do believe that I have been discriminated against because of my age as well.

*Id*. at 12.

Plaintiff further maintains she believes the fact she became ill at work "is a big part of why [she] was terminated. . . ." *Id*. at 12-13.

On September 9, 2008, Plaintiff filed a Charge of Discrimination with New York State Division of Human Rights, cross-filed with the Equal Employment Opportunity Commission ("EEOC") ("EEOC Charge"), alleging employment discrimination based on race, religion, national origin, age, and disability. Plaintiff also alleged Defendant retaliated against her for previously filing an employment discrimination claim against a former employer, Randolph Children's Home/New Directions ("the Children's Home") and that the media reports concerning one "Bucky Phillips," caused Defendant to be biased against all Native Americans.[5] Plaintiff included in her EEOC charge many statements pertaining to alleged employment discrimination Plaintiff experienced at her previous place of employment, *i.e.*, the Children's Home, with whom Plaintiff was employed prior to her employment with International Ordnance, and against whom Plaintiff commenced an employment discrimination action in this court, *Doverspike v.*

---

[5] Although not relevant to the issues before the court, in the interest of completeness and to assist in understanding Plaintiff's claims, the court notes that "Bucky Phillips" is a Native American convict who, in June 2006, escaped from a prison located within the Western District of New York, who, prior to being recaptured in September 2006, was observed in various parts of New York State, including in the vicinity of Defendant's place of business, and who shot at several New York State Troopers, killing one and injuring two others.

*Sawyer*, 06-CV-0163E ("*Doverspike I*"), alleging discrimination based on age, national origin, gender and disability.[6]

On February 18, 2009, the EEOC issued a Dismissal and Notice of Rights ("Right to Sue letter"), dismissing Plaintiff's employment discrimination charges on the ground that upon investigating the claim, the EEOC was unable to conclude that Defendant had discriminated against Plaintiff because of her race, national origin, religion, age, or disability. This action followed.

## **DISCUSSION**

Defendant seeks dismissal of the instant action pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), on the basis that Plaintiff has failed to allege sufficient facts to state a claim under any of the federal employment discrimination statutes Defendants allegedly violated with regard to Plaintiff's three-day period of employment.[7] Defendant's Memorandum at 3-6. In opposition to Defendant's motion, Plaintiff argues that because she is "well qualified" for the position from which she was terminated, it is both legally and morally "in the right" in bringing this action. July 28, 2009 Letter at 1; Plaintiff's Affidavit ¶¶ 1 and 3. On a motion to dismiss under Rule 12(b)(6), the court

---

[6] By Decision and Order filed September 27, 2006 (*Doverspike I*, Doc. No. 5), *Doverspike I* was dismissed for failure to exhaust administrative remedies.

[7] Although Plaintiff, whose employment with Defendant was terminated in October 2007, did not file the EEOC Charge until September 2008, beyond the 300-day statutory period for filing such charges, 42 U.S.C. § 2000e-5(e)(1), Defendant does not move to dismiss the claims based on untimely filing of the EEOC Charge. The 300-day EEOC Charge filing period, however, is not a jurisdiction prerequisite to filing an employment discrimination suit in district court but, rather, "it is a requirement subject to waiver, estoppel, and equitable tolling 'when equity so requires.'" *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)).

6

looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).

Regardless of whether the alleged employment discrimination is based on race, religion, national origin, age, or disability, courts analyze disparate treatment claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006). Specifically, the plaintiff must first establish a *prima facie* case of employment discrimination, after which the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the alleged disparate treatment, thus shifting the burden back to plaintiff to establish that defendant's proffered legitimate non-discriminatory reason is mere pretext. *Demoret*, 351 F.3d at 151 (citing *McDonnell Douglas*, 411 U.S. at 802-04). The *McDonnell Douglas* framework covers employment discrimination claims brought under Title VII which "prohibits employment-related discrimination on the basis of race, color, religion, sex or national origin and retaliation against employees who complaint about discrimination." *Mathirampuzha v. Potter*, 548 F.3d 70, 74 and 78 (2d Cir. 2008) ("Title VII claims are ordinarily analyzed under the familiar burden-shifting framework of *McDonnell Douglas Corp*. v. Green, 411 U.S. 792 (1973), and its progeny."), the ADEA, *Gorzynski v. JetBlue Airways Corp.*, __ F.3d __, 2010 WL 569367, * 11 (2d Cir. Feb. 19, 2010) ("we remain bound by, and indeed see no reason to jettison, the

[*McDonnell Douglas*] burden-shifting framework for ADEA cases that has been consistently employed in our [the Second] Circuit." (bracketed material added)), and the ADA, *McBride v. BIC Consumer Products Manufacturing Company, Inc.*, 583 F.3d 92, (2d Cir. 2009) ("Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."). As such, all of Plaintiff's claims, if sufficiently stated, would be analyzed under the *McDonnell Douglas* burden-shifting test.

To survive a motion to dismiss, however, a plaintiff asserting employment discrimination claims "need not allege 'specific facts establishing a *prima facie* case of discrimination'" under *McDonnell Douglas*. *Boykin v. Keycorp*, 521 F.3d 202, 212 (2d Cir. 2008) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)). Specifically, "the *McDonnell Douglas* burden-shifting framework 'is an evidentiary standard, not a pleading requirement' . . . [such] that to require more than Rule 8(a)'s 'simplified notice pleading standard' would unjustly impose a heightened pleading requirement on the plaintiff." *Boykin*, 521 F.3d at 212 (quoting *Swierkiewicz*, 534 U.S. at 510, and 512-13). Significantly, the Second Circuit has recognized that *Swierkiewicz* applies to the same employment discrimination claims that are subject to the *McDonnell Douglas* burden-shifting analysis, *Boykin*, 521 F.3d at 213, here, all Plaintiff's claims.

Further, two recent Supreme Court cases require application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009)). "First, although 'a

court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the review court to draw on its judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950). Despite *Twombly*, courts remain obligated to liberally construe a *pro se* complaint. *Harris*, 572 F.3d at 72 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

As such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570. "Asking for plausible grounds to infer [employment discrimination] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [employment discrimination]." *Twombly*, 550 U.S. at 556. "Specific facts are not necessary," because the plaintiff "need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555). Thus, although Plaintiff need not plead sufficient facts to establish a *prima facie* case of employment discrimination to survive Defendant's motion, the court

considers the elements of a *prima facie* case in determining whether there is sufficient factual matter in the Complaint which, if true, give Defendant "fair notice" of Plaintiff's employment discrimination claims and the grounds on which such claims rest. *Erickson*, 551 U.S. at 93. In determining whether sufficient facts in the Complaint provide Defendant with "fair notice" of the grounds on which Plaintiff's employment discrimination claims rest, the court liberally construes the Complaint with an eye toward the elements of an employment discrimination claim.

Establishing a p*rima facie* case of employment discrimination under Title VII and the ADEA requires the plaintiff demonstrate (1) membership in a protected class; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination, *i.e.*, a causal connection between the adverse employment action and membership in the protected class. *Gorzynski*, __ F.3d at __; 2010 WL 569367, * 14. Although Plaintiff "need not allege 'specific facts establishing a *prima facie* case of discrimination'" under *McDonnell Douglas*," *Boykin*, 521 F.3d at 212 (quoting *Swierkiewicz*, 534 U.S. at 508), absent any facts sufficient to provide Defendant with "fair notice" of the grounds on which such claims rest, the Complaint must be dismissed. *Erickson*, 551 U.S. at 93.

Here, although Plaintiff alleges she is a Native American holding Native American spiritual beliefs, and, at all relevant times, 48 years old, Plaintiff fails to allege any facts that could plausibly be construed as establishing Plaintiff's discharge was based on her membership in any of the protected classes of race, national origin, religion or age. In particular, although Plaintiff alleges membership in several protected classes, including race, national origin, religion and age, and that she was terminated

10

from her employment shortly after commencing work with Defendant, Plaintiff fails to allege any facts giving Defendant fair notice of any grounds, based on either direct or circumstantial evidence, supporting an inference that Plaintiff's termination was based on her membership in any such class. *Compare Boykin*, 521 F.3d at 214-15 (holding *pro se* plaintiff's complaint sufficiently gave notice of plaintiff's race and gender-based employment discrimination claim where the plaintiff alleged she was an African-American woman who sought a loan to purchase property in a predominantly African-American neighborhood, and satisfied all of the lender's credit requirements, but was denied the loan, whereas similarly situated loan applicants outside of any protected class received loans, because such allegations sufficiently described the circumstances giving rise to an inference of discrimination based on the alleged unequal treatment). In contrast, here, Plaintiff fails to allege any facts that any other employee, who was not a member of a protected class, was permitted to continue working for Defendant despite being unable to work at the requisite pace. Nor does Plaintiff allege any other facts which, if true, would establish that Plaintiff was subjected to any offensive treatment by Defendant based on Plaintiff's membership in a protected class, such as name-calling, slurs, or bad jokes, or that Plaintiff was subjected to work conditions different than other employees, such as shorter breaks, or being separated from the rest of Defendant's employees during work breaks such as at lunch, or references adverse to Plaintiff's beliefs, ethnicity, gender or age by Defendant contemporaneous to Plaintiff's termination.

     Even assuming, *arguendo*, it is possible that Defendant could have determined, or at least presumed, based upon physically observing Plaintiff, that Plaintiff was more

than 40 years of age, and was of Native American ethnicity, Plaintiff's allegation that she was "hired on the spot," Complaint at 6, establishes only that such membership in the relevant protected classes of race, national origin, and age, would have been readily apparent when Plaintiff was hired, thus rendering implausible that any such class membership was a ground for termination three days later. Plaintiff also fails to allege any facts that plausibly suggest Defendant became aware of Plaintiff's alleged religious beliefs after Plaintiff was hired, and that such beliefs were the basis of Defendant's decision to terminate Plaintiff. The Complaint is also devoid of any allegation that the job from which Plaintiff was terminated was given to someone who was not a member of any of the protected classes to which Plaintiff belongs. Rather, the Complaint's sole allegations are that Plaintiff, a member of several protected classes, was terminated from her employment after only three days, and that Plaintiff is convinced her claims are meritorious.

Moreover, in the Complaint, Plaintiff attributes her discharge to the fact that the movement of the conveyor belt caused her to become physically ill and unable to work. Complaint at 7 (describing how "the motion of watching the parts move on the conveyor belt" made Plaintiff "extremely ill."). Plaintiff's allegations include that she tried "very hard to hold myself together because I did not want to be terminated. I really needed a job, however, I knew I was gong to vomit at any given minute," *id*., and that Plaintiff believed the fact that she became ill during work "is a big part of why [she] was terminated. . . ." *Id*. at 11-12. Such facts, rather than providing Defendant with fair notice of the basis for Plaintiff's Title VII and ADEA claims, plausibly establish only that Plaintiff realized that she was suffering from some form of motion sickness caused by

watching the metal parts moving by Plaintiff on the conveyor belt, and that Plaintiff knew if she became ill from the motion sickness, she was likely to lose her job because Plaintiff's motion sickness, in fact, rendered Plaintiff unqualified for the job. Thus, rather than showing Plaintiff's claims are plausible, such allegations negate that Plaintiff was the victim of discriminatory animus of any form at the hands of Defendant.

Accordingly, the Complaint is devoid of sufficient facts providing Defendant with fair notice as to the grounds for Plaintiff's employment discrimination claims asserted under Title VII and the ADEA.

With regard to Plaintiff's employment discrimination claim based on disability, the ADA only protects Plaintiff if Plaintiff is a "qualified individual with a disability," 42 U.S.C. § 12112(a), defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). *See McBride*, 583 F.3d at 96 (discussing substantive standard for an ADA claim). Under the ADA, as relevant to the instant case, "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of [the] individual." 42 U.S.C. § 12102(1)(A). Further, "to be substantially limited . . . an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002).

Although plaintiff need not establish every element of a *prima facie* case of disability-based employment discrimination to survive Defendant's motion, *Boykin*, 521 F.3d at 212 (quoting *Swierkiewicz*, 534 U.S. at 508), absent any facts sufficient to

13

provide Defendant with "fair notice" of the grounds on which such claim rests, the Complaint must be dismissed. *Erickson*, 127 S.Ct. at 2200. As such, the court bears in mind that the elements of a *prima facie* case of disability-based employment discrimination include (1) the employer is subject to the ADA; (2), the plaintiff is disabled within the meaning of the ADA or is so perceived by his employer; (3) the plaintiff was otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation of the disability; and (4) the plaintiff suffered an adverse employment action because of the disability. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).

Here, although Plaintiff's allegations that she suffers from hypothyroidism, and has a history of unspecified "ear problems" and an abscessed tooth, Complaint at 5, the only alleged adverse impact caused Plaintiff's claimed medical conditions are sensitivity to cold, Complaint at 5 ("I cannot withstand cold for long periods of time), and moving more slowly than the "average person," Complaint at 11-12 (attributing fact that Plaintiff moves more slowly than average person to her hypothyroidism). Neither of these limitations, which Plaintiff attributes to her hypothyroidism, can plausibly be found to "severely restrict" Plaintiff "from doing activities that are of central importance to most people's daily lives." *Williams*, 534 U.S. at 198.

Plaintiff also fails to allege any facts providing Defendant with fair notice that such medical issues in any way rendered Plaintiff disabled within the meaning of the ADA. For example, the Complaint is devoid of any allegations regarding what impact, if any, Plaintiff's history of unspecified ear problems and an abscessed tooth, had on Plaintiff's ability to work. Despite Plaintiff's allegation that her hypothyroidism caused

14

her to move more slowly that the "average person," and the fact that Defendant's explanation for the discharge was that Plaintiff was unable to work at the requisite pace for the job, Complaint at 10-11, the Complaint is devoid of any allegation that Defendant was ever aware of any of Plaintiff's physical issues prior to Plaintiff's discharge, much less any negative impact such physical concerns could have on Plaintiff's ability to work, or that Plaintiff ever requested, and was denied, a reasonable accommodation of such disabilities. As such, the Complaint is devoid of sufficient facts to give Defendant fair notice of the grounds on which Plaintiff's ADA claim rests.

Finally, "[t]o state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007) (citing *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004)). In the instant case, although Plaintiff's filing of *Doverspike I* constitutes a protected activity, and Defendant's termination of Plaintiff's employment constitutes an adverse employment action, the Complaint fails to allege any causal connection between Plaintiff's filing of *Doverspike I* and Defendant's decision to terminate Plaintiff's employment. Particularly, no nexus, legal or business, between the Defendant in *Doverspike I* and the instant action, has been alleged by Plaintiff. Even assuming, *arguendo*, that it is possible to establish a causal connection supporting a retaliation claim based on Plaintiff's filing of the earlier lawsuit, to which Defendant was not a party, the Complaint fails to allege that Defendant was even aware of *Doverspike I*. Accordingly, Plaintiff has failed to state a retaliation claim

against Defendant.

## **CONCLUSION**

Based on the foregoing, Defendant's motion (Doc. No. 4) is GRANTED without prejudice; should Plaintiff fail to seek to file an amended complaint **within 45 days** of this Decision and Order, the Clerk of the Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: March 17, 2010
Buffalo, New York

**Any appeal of this Decision and Order to the United States Court of Appeals for the Second Circuit, New York, New York, must be filed within thirty (30) days of the date of this order in accordance with Fed.R.App. 4(a)(1)(A) and (c).**